**Alam GANEM, Appellant,**

v.

**Margaret HECKLER, Secretary of Health and Human Services.**

**No. 83–1990.**

United States Court of Appeals, District of Columbia Circuit.

Argued May 8, 1984.
Decided Oct. 23, 1984.

Michael V. Kowalski, Washington, D.C., with whom Mark Hanley Lipton, San Jose, Cal., was on the brief, for appellant.

John S. Koppel, Atty., Dept. of Justice, Washington, D.C., with whom Richard K. Willard, Acting Asst. Atty. Gen., Joseph diGenova, U.S. Atty., and Michael F. Hertz, Washington, D.C., were on the brief, for appellee. R. Craig Lawrence and Deborah A. Robinson, Asst. U.S. Attys., Washington, D.C., also entered appearances for appellee.

Before MIKVA, BORK and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This appeal presents the recurring question of whether and under what circumstances a writ of mandamus is available to

enforce the provisions of the Social Security Act. We hold that the Act does not preclude the exercise of mandamus jurisdiction and that the actions of the Secretary of Health and Human Services challenged in this case constitute such a complete abnegation of the Secretary's statutory responsibilities that issuance of the writ is warranted.

## I.

This case centers around the right of nonresident aliens residing in Iran to benefits accrued under the Social Security Act. Until recent years, all nonresident aliens were precluded from receiving disability or survivor benefits under the Act. *See* 42 U.S.C. § 402(t)(1). Amendments to the Act passed in 1969 created an exception to this general rule for certain classes of nonresident beneficiaries: if a wage earner has resided in the United States for more than ten years or has earned more than forty quarters of coverage, for example, the wage earner's nonresident beneficiaries retain their eligibility for benefits. Pub.L. No. 90–248, 42 U.S.C. § 402(t)(4)(A) and § 402(t)(4)(B). To receive these benefits, however, the beneficiary must reside in a country which does not have a social insurance scheme that discriminates against Americans:

> [The exceptions created in §§ 402(t)(4)(A) and 402(t)(4)(B)] shall not apply in the case of any individual who is a citizen of a foreign country that has in effect a social insurance or pension system which is of general application in such country and which [refuses to offer payments to eligible United States' citizens outside the country without regard to the duration of their absence].

42 U.S.C. 402(t)(4) (the alien nonpayment provisions). Thus, eligible nonresidents are entitled to benefits if (1) they live in a country that does not have a social insurance system or (2) if the social insurance system in their country treats eligible Americans under that system in a fashion reciprocal to the treatment accorded nonresident aliens by our social insurance system.

Appellant Alam Ganem is an Iranian citizen who moved from this country to Iran in 1964 several years after the death of her husband. By virtue of her husband's employment record here, Ganem was eligible for widow's benefits under Title II of the Social Security Act. Because it was determined that no social insurance system existed under the Shah's rule, Ganem received benefit checks in Iran from 1964 until November, 1979. These benefit checks were sent to the United States Embassy in Tehran.

Following the Iranian revolution and the seizure of the Embassy, the transfer of all funds to Iran was temporarily halted by Executive Order. 45 Fed.Reg. 26685 (1980). In August of 1980, however, the Treasury Department issued a special license permitting agencies, if they chose, to resume sending government benefits checks to beneficiaries residing in Iran. Despite the Treasury Department's action, the Social Security Administration (SSA), the branch of the Department of Health and Human Services that administers the Act, declined to resume benefit payments to Iranian residents. SSA's refusal to resume payments at that time was premised on two conclusions: first, that SSA no longer had access to records and beneficiaries to allow it to verify continuing eligibility, and second, that the Iranian revolution necessitated a new determination as to whether and what sort of social insurance scheme Iran possessed to assure that benefit payments would not violate the alien nonpayment provisions.

SSA to this date still has not reinstated benefit payments to eligible Iranian residents. In March of 1984—after commencement of this litigation—Ganem notified SSA that she had returned to the United States. The agency has consequently resumed benefit payments to Ganem effective April of 1984, but it continues to withhold her benefits for the period lasting from November of 1979 to March of 1984.

The ongoing nature of the controversy is therefore undisputed.

According to the government, the first basis for initially suspending payments to eligible Iranian residents no longer exists; The State Department in November of 1983 indicated to SSA that the American Interests Section of the Swiss Embassy in Tehran was willing to identify eligible social security beneficiaries residing in Iran. Even if that is not the case as a general matter, there seems to be no dispute in this case that appellant Ganem was eligible for benefits from 1979 to 1984 unless Iran was in violation of the alien nonpayment provisions. *See Reply to Response to Plaintiff's Motion for Summary Judgment,* Record Excerpts at Exh. 10. If Iran does not have a social insurance scheme or if the scheme it does have comports with Section 404(t)(4), Ganem should therefore receive benefits for that period. The Secretary of Health and Human Services (the Secretary) has in fact payed into an escrow account benefit payments to which Iranian residents are entitled should the Secretary conclude that any social insurance scheme now in place in Iran comports with the Act; if and when such a determination is made, beneficiaries will be made fully whole through receipt of past-due benefits. In the posture of the case as the government has presented it to us, then, the only obstacle between Ganem and her benefit checks is the government's need to determine the nature of any social insurance scheme that Iran may now have.

The government asserts that, in view of the strained diplomatic relations between this country and Iran, the Secretary remains unable to make this determination. Traditionally, the State Department provides SSA with the relevant information on a foreign country's social insurance system. In February of 1982, SSA sent a request for such information to Mr. Robert Tsukayama, a State Department official. Mr. Tsukayama responded that the situation in Iran made it impossible to comply. However, a careful examination of SSA's request makes clear that a significant factor in the State Department's inability to make this determination is the conditions which SSA imposes on the way such a determination must be made.

The letter sent by SSA incorporates what at oral argument was said to be the Secretary's long-standing and unequivocal position that the nature of a country's social insurance system can be determined *only* by direct contact with the relevant government officials of that country. As stated in the letter to the State Department:

In order to determine whether [Iran's social insurance system meets the conditions set out in the Act], the State Department is requested to have the American Interest Section of the Swiss Embassy in Tehran *approach the appropriate official in the government of Iran* to ascertain the social and welfare programs in effect in the country ... and *to specify by name and title the official who was the source of information.*

Similarly, an affidavit submitted for purposes of this litigation states that "*contact* with the current Iranian Government is necessary to determine whether the" payment of benefits to eligible Iranian beneficiaries would comport with the Act. (Emphasis added.) In light of this requirement of direct contact, it is little wonder that five years have passed since the Iranian revolution without SSA having determined whether Iran now has a social insurance system and, if so, whether that system discriminates against Americans. Indeed, the direct contact which the Secretary evidently believes is necessary to make that determination may not take place during the lifetime of Alam Ganem, who is presently 78 years old.

To overcome these difficulties and to remove the barriers to resumption of her benefit payments, Ganem sought a writ of mandamus in the district court. The district court held that the Secretary's refusal to resume payments at this time was a discretionary act not subject to judicial review and accordingly dismissed the request for the writ. We now reverse in part and order that, in the context of the current

situation in Iran, it is a clear abnegation of the Secretary's statutory responsibilities to require that the nature of Iran's social insurance system be determined only through "contact with the current Iranian government." A writ of mandamus will therefore issue compelling the Secretary to make as expeditious a determination as possible regarding the nature of Iran's social insurance system.

## II.

At the outset, we must deal with the difficult jurisdictional questions presented by this case and not passed upon by the district court. These questions center around the meaning of 42 U.S.C. § 405(h), the much-litigated provision of the Social Security Act that precludes federal-question jurisdiction for review of social security benefit claims:

> The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under sections 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.

■ Under governing law, it is clear that Ganem's claim falls within the sweep of this preclusive provision. The Supreme Court has held that an action is barred by § 405(h) if it "arises under the Act" in the sense that "both the standing and the substantive basis" for the presentation of the underlying claim are provided by the Act. *Weinberger v. Salfi,* 422 U.S. 749, 760–61, 95 S.Ct. 2457, 2464–65, 45 L.Ed.2d 522 (1975). That definition was confirmed recently in *Heckler v. Ringer,* —— U.S. ——, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984), in which the Court, interpreting § 405(h) insofar as that section is directly incorporated into the Medicare Act, held that, whether a claimant challenges the procedures used by

the Secretary to reject a claim or challenges the substantive basis for that rejection, § 405(h) makes § 1331 jurisdiction unavailable. In light of these decisions, Ganem's claims, which find their substantive origins in the Social Security Act, cannot be brought into federal court under the auspices of § 1331.

■ The logical next place to look for a jurisdictional basis for this action is 42 U.S.C. § 405(g), for that section, after requiring that administrative avenues of relief be exhausted, restores much of the jurisdiction withdrawn by § 405(h). Section 405(g) provides that:

> Any individual, after any final decision of the Secretary made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or with such further time as the Secretary may allow. Such action shall be brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business, or, if he does not reside or have his principal place of business within any such judicial district, in the United States District Court for the District of Columbia. As part of his answer the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.

Ganem's complaint did not specifically assert § 405(g) as a basis for jurisdiction. Nonetheless, we must consider the possibility that jurisdiction exists under this section, both because "we are sensitive to an obligation to explore any promising avenue

to the District Court's jurisdiction, whether or not suggested by the parties," *Association of American Medical Colleges v. Califano*, 569 F.2d 101, 111 (D.C.Cir.1977); *See generally* 1 *Moore's Federal Practice* ¶ 0.60[3] at 622 n. 5 (2d ed. 1980), and because, to determine whether mandamus jurisdiction is available, we must first determine whether there are any other available routes through which federal jurisdiction could be exercised over Ganem's claims. *See Heckler v. Ringer, supra*, —— U.S. at ——, 104 S.Ct. at 2021 (holding mandamus inappropriate when § 405(g) jurisdiction available).

■ Three conditions must be satisfied to obtain judicial review under § 405(g). *Weinberger v. Salfi*, 422 U.S. at 764, 95 S.Ct. at 2466. First, there must be a final decision of the Secretary after a hearing. Second, the civil action must be commenced within sixty days after the mailing of notice of such decision, or within such additional time as the Secretary may permit. Third, the action must be filed in an appropriate district court. Of these conditions, the last two of which are waivable by the parties, the requirement that there be a final decision by the Secretary after a hearing is "central to the requisite grant of subject-matter jurisdiction." *Id.* Subsequent to *Salfi*, the Court in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1975), elaborated on this finality requirement by concluding that it consists of two elements, "only one of which is purely 'jurisdictional' in the sense that it cannot be 'waived' by the Secretary in a particular case." *Id.* at 328, 96 S.Ct. at 899. The element that is jurisdictional is that a claim for benefits must be presented to the Secretary; absent such a claim there simply cannot be a decision to review. The second element is that the decision must be final in that the administrative remedies prescribed by the Secretary must have been exhausted; this element is waivable by the Secretary because, once a claim has been presented to her and a decision rendered on it at some level of the bureaucracy, the Secretary has the discretion to conclude that further administrative proceedings would not be helpful.

Given this framework of analysis, we conclude that appellant has not yet received a final decision on her claim for benefits and hence jurisdiction is not available under § 405(g). The Secretary has not permanently *cancelled* benefits to Ganem; instead, those benefits have been merely *suspended* pending the necessary determination regarding Iranian law. Indeed, the Secretary, as noted above, continues to pay into an escrow account the benefits allegedly owing to Iranian residents such as Ganem, and the Secretary has made clear that, if it is found that Iran does not have a social insurance scheme that discriminates against Americans, appellant will be entitled to past suspended benefit payments. Under these circumstances, it would strain the meaning of finality past the breaking point to hold that the Secretary has finally decided that Ganem is not entitled to the contested benefits. *See* 20 C.F.R. § 404.903 (1982) (defining non-final actions to include, *inter alia*, the suspension of benefits pending investigation into factual issues such as deductions on account of work or investigation into whether disability has ceased).

Nor do we believe that the Secretary has made a final "decision" as to the method to be used to determine the content of Iranian law. It is true that the Secretary has not indicated any intent to alter the Department's longstanding practice of making such determinations via direct contact with the relevant government, and it may also be true that, for all practical purposes, the Secretary's position is tantamount to a final determination that Iranian residents should not receive benefit payments. Yet however final they are in practical effect, such internal administrative policies, which apply across the board to an entire class of beneficiaries without regard to the specific facts involving any particular beneficiary's claim, are not final "decisions" made after a hearing to which the claimant was a party within the meaning of § 405(g). *See Ellis v. Blum*, 643 F.2d 68, 82 n. 15 (2d Cir.1981). As a result, there is as of now

no final decision on Ganem's benefit claim that would trigger jurisdiction under § 405(g); the Secretary has not *finally* decided the merits of Ganem's claim and the requirement of direct contact with the Iranian government is not a *decision* on Ganem's claim.

█ Because neither general federal-question jurisdiction under § 1331 nor specific jurisdiction under the Act via § 405(g) is available, we are thus brought to the question whether mandamus, 28 U.S.C. § 1361, the sole remaining potential basis for jurisdiction and the basis asserted in the complaint, is available under the Social Security Act. The Supreme Court has four times explicitly reserved judgment on this question, *see Heckler v. Ringer, supra,* —— U.S. at ——, 104 S.Ct. at 2021; *Califano v. Yamasaki,* 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979); *Mathews v. Eldridge, supra,* 424 U.S. at 332 n. 12, 96 S.Ct. at 901 n. 12; *Norton v. Mathews,* 427 U.S. 524, 529–30, 96 S.Ct. 2771, 2774–75, 49 L.Ed.2d 672 (1976), but there is now an unfractured consensus in the Courts of Appeals that have considered the question that mandamus remains available under the Act in appropriate circumstances, *see Lopez v. Heckler,* 725 F.2d 1489, 1507–08 (9th Cir. 1984); *Belles v. Schweiker,* 720 F.2d 509, 511–13 (8th Cir.1983); *Kuehner v. Schweiker,* 717 F.2d 813, 819 (3rd Cir.1983); *Starnes v. Schweiker,* 715 F.2d 134, 141–42 (4th Cir.1983), *vacated on other grounds sub nom. Starnes v. Heckler,* —— U.S. ——, 104 S.Ct. 2673, 81 L.Ed.2d 870 (1984); *Ellis v. Blum,* 643 F.2d 68 (2nd Cir.1981); *Martinez v. Richardson,* 472 F.2d 1121, 1125–26 (10th Cir.1973); *see also Matos v. Secretary of Health, Education and Welfare,* 581 F.2d 282, 286 n. 6 (1st Cir.1978) (suggesting that mandamus not precluded). This circuit has never squarely issued a holding on the question. Dictum in *Association of American Medical Colleges, supra,* however, strongly intimated approval of the position that mandamus is not precluded by the Act. In that case we stated that "mandamus may become available in limited circumstances not involved here. Had appellant alleged undue delay or plain departure from statutory procedures, perhaps mandamus could have been employed to compel the Secretary to adhere to" the Act. 569 F.2d at 113. We also cited with apparent favor decisions of the Second, Ninth, and Tenth Circuits that had found mandamus to be available under the Act. *See id.* at 113 n. 100 (citing *White v. Mathews,* 559 F.2d 852 (2d Cir.1977), *Elliott v. Weinberger,* 564 F.2d 1219 (9th Cir.1977), and *Ryan v. Shea,* 525 F.2d 268 (10th Cir. 1975)). We had no need definitively to resolve the question in *American Medical Colleges,* however, because we found that administrative remedies, which the appellant in that case had not yet exhausted, were available and that mandamus relief was therefore inappropriate. *See generally Heckler v. Ringer, supra,* —— U.S. at ——, 104 S.Ct. at 2021 (mandamus not appropriate when further administrative relief still available).

As discussed below, we find that appellant in this case has exhausted all available administrative remedies. We therefore confront the question not explicitly decided in *American Medical Colleges* and join the consensus of the Courts of Appeals by holding that mandamus jurisdiction is not precluded by the Act.

In reaching this conclusion, we rely centrally on the plain language of § 405(h), which we again quote:

The findings and decisions of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under sections 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.

Because mandamus jurisdiction is codified in section 1361 of title 28, it is tempting to conclude that the lack of a specific reference to 1361 in this preclusion provision

indicates Congress intended to allow mandamus jurisdiction to be exercised. However, historical factors require a more complex analysis of the question. As originally enacted, the final sentence of § 405(h) read: "No action against the United States, the Board, or any officer or employee thereof shall be brought under section 24 of the Judicial Code of the United States to recover on any claim arising under this title." Social Security Act Amendments of 1939, Pub.L. No. 76-379, § 205(h), 53 Stat. 1360, 1371 (1939). The sentence took its present form during the 1948 revision of the Judicial Code; the changes made by the codifiers, whose "choice, 'made ... without the approval of Congress ... should be given no weight,'" are of no substantive moment. *North Dakota v. United States,* 460 U.S. 300, 310 n. 13, 103 S.Ct. 1095, 1098, n. 13, 75 L.Ed.2d 77 (1983) (quoting *United States v. Welden,* 377 U.S. 95, 99 n. 4, 84 S.Ct. 1082, 1085, n. 4, 12 L.Ed.2d 152 (1964)). We must therefore construe § 405(h) in light of its original reading and original meaning.

At the time of the enactment of the 1939 Social Security Act Amendments, § 24 of the Judicial Code, later codified as § 41 of Title 28, contained all the general statutory grants of jurisdiction to the district courts. Mandamus jurisdiction, however, was not codified for the federal courts until passage of the Mandamus and Venue Act in 1962. Pub.L. No. 87-748, Oct. 5, 1962, 76 Stat. 744. Before this time, federal district courts outside the District of Columbia did not have power to issue original writs of mandamus. *See generally* Byse, *Proposed Reforms in Federal "Nonstatutory" Judicial Review: Sovereign Immunity, Indispensable Parties, Mandamus,* 75 Harv.L. Rev. 1479 (1962). District courts for the District of Columbia, however, had long exercised a common law jurisdiction to issue writs of mandamus, a jurisdiction derived from the Act of February 27, 1801, 2 Stat. 103, which provided that the laws of Maryland should continue in force in that part of the District ceded by Maryland to the United States. *See Kendall v. United States ex rel. Stokes,* 37 U.S. (12 Pet.) 524,

9 L.Ed. 1181 (1838). By the time that Section 405(h) was enacted, the District of Columbia's mandamus jurisdiction had been held many times to be an appropriate basis for challenges to administrative action. *See, e.g., Roberts v. United States,* 176 U.S. 221, 229–31, 20 S.Ct. 376, 379–80, 44 L.Ed. 443 (1900); *United States ex rel. United States Borax Co. v. Ickes,* 98 F.2d 271 (D.C.Cir.1938). Yet no mention of the uncodified mandamus jurisdiction of the District of Columbia courts was made in Section 405(h). We agree with Judge Friendly that "[i]t would seem plausible to conclude from this that when Congress enacted § 405(h) in 1939, it did not bar the District of Columbia courts from issuing writs of mandamus against the Secretary's predecessor ...." *Ellis v. Blum,* 643 F.2d 68, 81 (2d Cir.1981). While other circuits have invoked the conclusion that § 405(h) does not abolish mandamus for the District of Columbia federal courts as a launching board for the further conclusion that Congress surely could not have intended prospectively to preclude mandamus jurisdiction for all federal courts except those in the District, this court can stop its inquiry at the first stage; we conclude that, whatever Congress' intent with respect to other federal courts, there is nothing to indicate that Congress intended to abolish the historic common law power of federal courts in the District to issue writs of mandamus to federal officials.

That conclusion is buttressed by the fact that, when Congress desired to prohibit actions in the nature of mandamus to review analogous benefit decisions, it did so expressly. Before 1970, 38 U.S.C. § 211(a) provided that decisions of the Administrator of Veterans' Affairs regarding benefit claims were final and that "no other official or any court of the United States shall have power to review any such decision." 72 Stat. 1115. When federal courts narrowly interpreted this section and continued to review benefit decisions despite it, Congress responded by amending the quoted language to read: "no other official or any court of the United States shall have

power or jurisdiction to review any such decision by an action *in the nature of mandamus* or otherwise." 84 Stat. 790 (emphasis added). *See* H.Rep. No. 91–1166, 91st Cong., 2d Sess. 8–11 (1970), *reprinted in* 1970 U.S. Code Cong. & Admin. News 3723, 3729–31. The fact that Congress knows how to withdraw a particular remedy and has not expressly done so is some indication of a congressional intent to preserve that remedy. *Cf. Texas Industries v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981) (relying on Congress' express provision of a right to contribution in the 1933 and 1934 securities acts to hold that the absence of such an express right in the Sherman Act demonstrates a congressional intent not to provide contribution under the Sherman Act).

Moreover, we do not believe the availability of mandamus jurisdiction under the Social Security Act would pose any threat to the policies sought to be promoted by § 405(h). As discussed in the next section, a writ of mandamus will issue only when the plaintiff has attempted to exhaust all administrative remedies and only when the defendant has a clear duty to act. Proper application of these standards in individual cases should assure that federal courts avoid interference in the day-to-day eligibility determinations that Congress intended to be resolved before the Secretary and reviewed by the federal courts only in accordance with § 405(g). We therefore agree with every other court of appeals that has considered the question and hold that § 405(h) does not preclude the exercise of mandamus jurisdiction.

## III.

■ Having found mandamus jurisdiction not precluded, we turn to the question whether this is an appropriate case for issuance of the writ. As an extraordinary remedy, mandamus generally will not issue unless there is a clear right in the plaintiff to the relief sought, a plainly defined and nondiscretionary duty on the part of the defendant to honor that right, and no other adequate remedy, either judicial or administrative, available. *See Heckler v. Ringer, supra,* —— U.S. at ——, 104 S.Ct. at 2021; *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980); *United States ex rel. Girard Trust Co. v. Helvering,* 301 U.S. 540, 543–44, 57 S.Ct. 855, 857, 81 L.Ed. 1272 (1937); *Cartier v. Secretary of State,* 506 F.2d 191 (D.C.Cir.1974).

Ganem's complaint presented to the district court a variety of headings under which she claimed entitlement to relief from allegedly illegal actions of the Secretary. Ganem asserted causes of action under the Social Security Act, the Due Process Clause of the Fifth Amendment, and the Administrative Procedure Act. As clarified at oral argument, however, the claims embraced by these causes of action distill to the argument that the Secretary has an obligation to determine what sort of social insurance scheme, if any, is currently in place in Iran and that this obligation has been effectively contravened by the method chosen by the Secretary for making this determination. Although Ganem's complaint was not precisely tailored to this claim (the complaint actually asked for restoration of benefits), appellant urged both in the district court and on appeal that the Secretary be ordered to stop relying on the need for direct contact with the Iranian government. In the interests of judicial economy and in light of the liberal rules of federal procedure, we address this argument, the merits of which were fully briefed and argued by the government, and treat Ganem's complaint as if it were amended to present the claim actually argued before us. *See Cardenas v. Smith,* 733 F.2d 909 at 914 (D.C.Cir.1984); *see generally* C. Wright & A. Miller, *Federal Practice and Procedure* § 1489, at 449 (1971) (appellate court can remand with directions to allow the appellant to amend pleadings).

■ With respect to this claim, Ganem has no recourse other than mandamus. Her complaint states that she has filed several letters with the Social Security Ad-

ministration asking for the relief she seeks in·this lawsuit. She also filed a form authorizing the SSA to deposit her benefit checks directly in a California bank. Nonetheless, the Secretary has continued to plead inability to determine the content of Iranian law and has continued to deny Ganem benefit payments for the period from November of 1979 to March of 1984. There are no further administrative routes of appeal open to appellant; other than awaiting the Secretary's determination as to the content of Iranian law—precisely the thing which Ganem claims that she should not have to do in light of the statute's commands—there is nothing Ganem can do. The government does not contest the point that mandamus is appellant's only potential remedy.

We turn, then, to the requirements that the plaintiff have a clear right to relief and that the defendant owe a plain and nondiscriminatory duty. The effort over the years to give content to these standards has perhaps sown more confusion than coherence, see L. Jaffe, Judicial Control of Administrative Action 181 (1965); 3 K. Davis, Administrative Law Treatise 356 (1958), but the most lucid analysis, in our view, remains that offered by Chief Justice Taft nearly sixty years ago:

> Mandamus issues to compel an officer to perform a purely ministerial duty. It cannot be used to compel or control a duty in the discharge of which by law he is given discretion. The duty may be discretionary within limits. He cannot transgress those limits, and if he does so, he may be controlled by injunction or mandamus to keep within them. The power of the court to intervene, if at all, thus depends upon what statutory discretion he has .... [The] extent [of the officer's discretion] and the scope of judicial action in limiting it depend upon a proper interpretation of the particular statute and the congressional purpose.

Work v. United States ex rel. Rives, 267 U.S. 175, 45 S.Ct. 252, 69 L.Ed. 561 (1925) (emphasis added). The central issue in every mandamus case must be the "proper interpretation of the particular statute and the congressional purpose." See W. Gellhorn, C. Byse, & P. Strauss, Administrative Law 923 (1979). Applying this principle to Ganem's claims, we believe mandamus is warranted to compel the Secretary to adopt realistic means for determining the content of Iranian law but is not appropriate to order the Secretary to resume benefit payments pending that determination.

The Secretary's position that the content of Iranian law can be determined only by "contact with the current Iranian government" is totally insensitive to the realities of current relations between the countries; her position thus completely contravenes the purposes of the 1969 amendments to the Act. Clearly the Secretary would violate her statutory duties were she simply to decide not to make any determination at all about a foreign country's social insurance system. Such a decision would capriciously deprive individuals such as appellant, whose husband worked for more than ten years in this country and contributed regularly during that period to social security, of their statutory entitlements. Yet in light of current relations between this country and Iran, the Secretary's insistence on "contact" between the governments is tantamount to a decision to do nothing. Five years have passed since the Iranian revolution and still the Secretary has not been able to make the relatively ordinary and routine determination of the state of Iranian law. The Secretary's approach to this question puts those nonresident aliens whom Congress entitled to social security benefits and whose livelihood may depend on continued receipt of benefits that they or their spouse have earned, into a grim survivorship ordeal; they must outlast the present chill in relations between the two countries.

The determination which the Secretary asserts can only be made through "contact with the current Iranian government" and which, as a result, has not been made for five years, is one which courts make virtually every day as a matter of course. The

reason courts can make this determination in less than five years is that direct governmental contact has not been deemed necessary to the task. Under Rule 44.1 of the Rules of Civil Procedure, "[t]he court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Foreign law is thus proved essentially as a matter of fact (although the determination is treated as a matter of law for purposes of review). Generally, written or oral expert testimony accompanied by extracts from foreign legal material is the basic method by which foreign law is proved. *See* Miller, *Federal Rule 44.1 and the "Fact" Approach to Determining Foreign Law: Death-Knell for a Die-Hard Doctrine*, 65 Mich.L.Rev. 613, 658 (1967); *see also* Uniform Interstate and International Procedure Act, Art. IV, § 402 (to determine foreign law court may consider any relevant material or source).

We believe it is most consistent with the purposes of the Act for the Secretary to apply a similar approach to her task. The Secretary of course has discretion in the method by which she chooses to determine foreign law, but that discretion must be exercised in some manner and consistent with the statutory purposes. When the Secretary refuses to perform her statutory duties, mandamus is an appropriate remedy to force her to do so. It is simply not within the Secretary's discretion to deprive entitled beneficiaries of their earned rights by virtue of a policy position that virtually assures the Secretary's inability to make a determination which the statute obligates her to make. Nothing in the statute authorizes the Secretary to adopt a position of impossibility.

The Secretary cannot rely on the necessity of "contact with the current Iranian government" as a basis for claiming an inability to determine the content of Iranian law. Instead, the Secretary must allow appellant a reasonable opportunity to prove Iranian law; the Secretary can then carry out her statutory responsibility to make findings on the nature of Iran's social insurance system. To the extent relevant questions remain less than definitively resolved by this process, the Secretary can rely on reasonable presumptions and assumptions regarding the nature of the current Iranian government and its general policies. At this late date, however, the Secretary cannot continue to assert a complete inability to make the necessary determination; eligible beneficiaries are entitled to a decision on the content of their country's laws within a reasonable time and that time has long since elapsed.

We realize that our insistence that the Secretary make the most informed decision possible at this time means that the Secretary may render a decision which, when more information is available on the content of Iranian law, she may desire to alter. Nonetheless, we believe that five years after the Iranian revolution some decision is more consistent with the Act's purposes than no decision at all. Such an approach to the decisional process, while less than perfect, will prevent the Act from being transformed into a set of hollow promises for Iranian residents.

The government insisted at oral argument that determining Iranian law through any means other than direct contract with the Iranian government would impugn Iran's sovereignty. We consider the argument totally without merit. Surely federal courts do not intrude on foreign sovereignty when they routinely determine the content of foreign law in the manner discussed above. We see no reason that a foreign government's sovereignty is any more violated when an administrator makes the same determination after a reasonable investigation.

CONCLUSION

Congress in 1969 amended the Social Security Act specifically for the purpose of extending benefit payments to eligible beneficiaries who resided in a foreign country. That extension was qualified, however, by a policy of reciprocity which prohibits payments to individuals who resided in coun-

tries which were found to have a social insurance system that discriminated against Americans. With respect to Iran, the Secretary has sought to apply this policy in a manner so perverse as to virtually guarantee that the determination will not be made in a reasonable time. Such insensitive administrative application of this qualification makes a mockery of the purposes of the 1969 amendment. We order that a writ of mandamus issue to compel the Secretary to alter her methods of making the necessary determination in accordance with the guidelines set out above. As this action was brought via mandamus, we choose not to reach any other claims raised by appellant and express no opinion on them.

*It is so ordered.*