Alam GANEM, Appellant,

v.

Otis R. BOWEN, Secretary of Health
and Human Services.

No. 85–6148.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 27, 1986.

Decided Feb. 20, 1987.

Mark H. Lipton, with whom Michael V. Kowalski, Washington, D.C., was on the brief, for appellant.

John S. Koppel, Atty., Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty., and Robert S. Greenspan, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellee.

Before MIKVA and BUCKLEY, Circuit Judges, and PARSONS,* Senior District Judge.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This case arises from a determination of the Secretary of Health and Human Services ("HHS") concerning the nature of Iran's social insurance system. The determination rendered appellant Alam Ganem, a citizen and resident of Iran, ineligible to receive widow's benefits under the provisions of the Social Security Act. Ganem challenged the determination in district court as arbitrary and capricious and as contrary to a prior holding of this court. The district court rejected these contentions, and we affirm.

## I. BACKGROUND

Section 402(t) of the Social Security Act provides the statutory framework within which the dispute in this case has occurred. *See* 42 U.S.C. § 402(t) (1983). That section governs the eligibility of nonresident aliens to receive old-age, survivor's, and disability benefits under the Act. Section 402(t)(1) prohibits the Secretary of HHS from paying benefits to any foreign citizen who has lived outside of the United States for more than six months. Sections 402(t)(2)-(7) set forth exceptions to this prohibition. The exception specified in § 402(t)(4) is central to this case. As originally enacted, § 402(t)(4) provided that the prohibition of § 402(t)(1) would not apply if the person on whose income the benefits were based had lived in the United States for more than ten years or had earned more than forty quarters of coverage. In 1968, Congress amended § 402(t)(4) to make this exception inapplicable when the nonresident alien's country of citizenship maintains a social insurance system of general application that refuses to pay accrued benefits to United States' citizens residing outside of that foreign country. As a result of this amendment, a nonresident alien is entitled to receive benefits under § 402(t)(4) only if her country of citizenship either (1) has no social insurance system of general application or (2) has a social insurance system of general application that makes payments to any United States' citizen who has earned them.

Ganem is an Iranian citizen who lived in the United States for many years, but relocated to Iran in 1964 after the death of her

* Of the United States District Court for the Northern District of Illinois, sitting by designation

pursuant to 28 U.S.C. § 294(d).

husband. Because Ganem's husband had resided and worked in the United States for the requisite periods of time, the Secretary paid widow's benefits to Ganem under § 402(t)(4). Congress's subsequent amendment of § 402(t)(4) had no effect on Ganem. Soon after the amendment, the Secretary determined that Iran did not have a social insurance system of general application. The Secretary thus continued to pay benefits to Ganem under § 402(t)(4).

These payments ceased shortly after the Iranian revolution. As a result of the overthrow of the Shah, the assumption of power by Ayatollah Khomeini, and the subsequent seizure of the American Embassy in Iran, President Carter issued an Executive Order in 1979 temporarily halting the transfer of funds to that country. In August of 1980, the Treasury Department issued a special license permitting agencies to resume sending governmental benefits to residents of Iran. The Secretary of HHS, however, declined to renew the payment of benefits to Iranian residents. The Secretary contended that the Iranian revolution necessitated a new determination as to the nature of Iran's social insurance system and that she could make no payments prior to the issuance of this new determination. The Secretary, however, subsequently failed to make a new determination; she averred that the absence of direct contact between the governments of the United States and Iran rendered any conclusions about the Iranian social insurance system impossible. The suspension of benefit payments to Iranian residents thus continued, with no apparent end in sight.

In an effort to force the Secretary to resume the payment of benefits, Ganem petitioned the district court for a writ of mandamus. The district court held that the Secretary's refusal to resume payments was a discretionary act not subject to judicial review and accordingly dismissed the request for the writ. On appeal, this court reversed in part. Although we refused to order the Secretary to resume benefit payments, we held that "in the context of the current situation in Iran, it is a clear abnegation of the Secretary's statutory responsibilities to require that the nature of Iran's social insurance system be determined only through 'contact with the current Iranian government.'" *Ganem v. Heckler,* 746 F.2d 844, 848 (D.C.Cir.1984). We therefore issued a writ of mandamus compelling the Secretary "to adopt realistic means for determining the content of Iranian law," *id.* at 853, and then "to make as expeditious a determination as possible," *id.* at 848.

The Secretary issued her new determination in 1985, but it did not benefit Ganem in the slightest. The Secretary found that the Shah had instituted a social insurance system of general application in 1975 and that this scheme continued under the Ayatollah. The Secretary further determined that as of 1978 the Iranian government had refused to pay benefits to qualified United States' citizens residing outside of Iran. This pair of findings excluded Ganem from the coverage of § 402(t)(4) and thereby rendered her ineligible to receive widow's benefits under the Social Security Act.

Ganem brought suit challenging the Secretary's finding that Iran possesses a social insurance scheme of general application. (Ganem declined to challenge the finding that the Iranian government discriminates against United States' citizens residing outside of Iran in making benefit payments.) The district court upheld the determination, and Ganem now appeals.

## II. Discussion

This court may set aside the Secretary's determination concerning Iranian social insurance law only if the determination is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1983). In applying the "arbitrary and capricious" standard, we examine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 824, 28 L.Ed.2d 136 (1971). Although our inquiry "is to be

searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Id.*

Ganem offers three reasons for viewing the agency's action as arbitrary and capricious. First, Ganem claims that the Secretary failed to articulate any standard for making the determination. Second, Ganem asserts that the Secretary based her determination on faulty statistical data and methodology. Third, Ganem contends that the Secretary reversed prior agency determinations without explanation. Ganem also avers that the Secretary's determination is "otherwise not in accordance with law": Ganem argues that the determination conflicts with the decision that this court rendered when it granted Ganem's petition for a writ of mandamus. Although we sympathize with Ganem's long-standing efforts to regain benefit payments in the face of governmental indifference and obstinacy, we cannot accept any of these arguments as a basis for reversing the Secretary's determination that Iran has a social insurance system of general application.

■ Ganem's claim that the Secretary failed to articulate any standard for making the 1985 determination is hard to fathom. Ganem asserts that the Secretary did not reveal the "guidelines or parameters ... utilized" in making the determination. Brief for Appellant at 22–23. But the agency's regulations set forth the relevant standard and the Secretary clearly articulated and applied it. Under 20 C.F.R. § 404.463(a)(3) (1986), a social insurance system is of general application if the system

> cover[s] a substantial portion of the paid labor force in industry and commerce, taking into consideration the industrial classification and size of the paid labor force and the population of the country as well as the occupational, size of employer and geographical limitations on coverage.

Ganem may mean to challenge the substance of this regulation: she appears to suggest that the standard set forth in the regulation is improperly vague and that an appropriate standard would incorporate exact percentages and numbers. *See* Brief for Appellant at 24–25. But neither the language nor the purpose of the relevant statutory provision requires the Secretary to adopt such a precise numerical rule. We must therefore reject Ganem's implicit challenge to the standard embraced in the agency's regulations. *Cf. Chevron U.S.A. Inc. v. NRDC,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (holding that a reviewing court must affirm reasonable regulations that an agency has designed to elucidate statutory provisions it administers).

■ The Secretary's selection and use of statistical data raises more serious questions. The Secretary decided that § 404.-463(a)(3)'s "substantial portion" test required her to employ the following ratio in making her determination:

$$\frac{\text{the number of individuals whom Iran's insurance system covers}}{\text{the number of individuals engaged in industry and commerce}}$$

*See* Record Excerpts at 6–8. The Secretary assigned numeric values to this ratio primarily by using the employment and demographic information provided in the Yearbooks of Labour Statistics of the International Labour Organization (ILO). The Secretary determined the denominator by subtracting the number of individuals engaged in agriculture and forestry (as listed in the ILO Yearbooks) from the economically active population (also as listed in the ILO Yearbooks). *See id.* The Secretary determined the numerator by finding that the 1975 Iranian social insurance law extended coverage to all wage and salaried employees (other than armed forces personnel and certain other government workers) and then by extracting the number of wage and salaried employees in Iran from the ILO Yearbooks. *See id.* The Secretary's conclusions were as follows:

- In 1975, 4,415,570 individuals were engaged in industry and commerce, and 3,322,361 individuals were covered by the social insurance law. Therefore, 75% of the labor force engaged in in-

dustry and commerce was covered, and the system was of general application.

- In 1979, 6,118,564 individuals were engaged in industry and commerce, and 4,735,858 individuals were covered by the social insurance law. Therefore, over 70% of the labor force engaged in industry and commerce was covered, and the system was of general application.

- In 1983, 6,180,742 individuals were engaged in industry and commerce, and 4,735,858 individuals were covered by the social insurance law. Therefore, over 75% of the labor force in industry and commerce was covered, and the system was of general application.

*See id.* Ganem raises two basic objections to this statistical analysis. We raise and discuss a third *sua sponte.*

Ganem first attacks the Secretary's reliance on the employment and demographic information contained in the ILO Yearbooks. Ganem points out that the Yearbooks contain statistics on Iran that are several years out-of-date: the figures in the 1975 Yearbook are based on the results of the 1966 Iranian census, and the statistics in the 1979 and 1983 Yearbooks are based on the results of the 1976 census. Ganem contends that the use of these figures distorts the Secretary's results and makes her determination meaningless. According to Ganem, the Secretary should have used more recent figures, which are available in such publications as the World Almanac, the Information Please Almanac, and the Statesmen's Yearbook. The figures contained in these publications are indeed very different from those in the ILO Yearbooks. For example, the Information Please Almanac estimates the population of Iran in 1983 at 41 million, whereas the 1983 ILO Yearbook lists the Iranian population as 33 million; more specifically, the Information Please Almanac estimates that 8.3 million Iranians were engaged in industry and commerce in 1983, whereas the 1983 ILO Yearbook states that approximately 6.2 million Iranians were so employed.

We recognize that the figures the Secretary used are based on old census data, but we cannot reverse the Secretary's determination on that account. The statistics that Ganem cites are insufficiently detailed to enable the Secretary to make the necessary determinations; the statistics, for example, say nothing about the number of wage and salaried employees in Iran. And given the state of relations between Iran and the United States, the Secretary's other sources of information are inherently limited. In these circumstances, the Secretary's decision to use the most recent census data in order to make her determination is entitled to judicial respect. Moreover, we suspect that the mere incorporation of more recent statistical data would change only slightly (if at all) the Secretary's results. We see little reason to believe that the increase in the number of individuals engaged in industry and commerce has outstripped greatly the increase in the number of wage and salaried employees during the past few years in Iran. The use of old census data thus provides insufficient reason to overturn the Secretary's determination.

Ganem's next argument focuses on the Secretary's determination of the number of individuals whom the Iranian social insurance system covers (the numerator in the ratio we described above). Ganem notes that the Secretary's findings regarding coverage conflict with other statistics in the record; Ganem then asserts that the Secretary should have adopted these other statistics. Ganem points in particular to figures found in three reports. Iran's Social Security Organization prepared two of these reports, dated February 9, 1983 and March 29, 1984, for the use of the International Social Security Association. Both reports state that Iran's social insurance law covers all wage earners except military personnel and certain other government workers. The reports proceed, however, to cite statistics regarding coverage that are notably lower than those the Secretary used. The 1983 report states that the total number of persons "covered" was 1,750,-000, *see* Record Excerpts at 7, 173; the 1984

report states that the total number of persons "insured" was 1,902,602, *see id.* at 7, 179. In addition, a report of unknown origin that the Secretary received from the Swiss Embassy states that the Iranian insurance system covered 1,958,339 persons in 1982 and 2,403,999 persons in 1983. *See id.* at 7, 20. Each of these figures diverges dramatically from the Secretary's own estimate of the number of persons whom the Iranian insurance system covered in 1983 (4,745,019). Ganem asserts that the lower figures are the more accurate: she contends that the Iranian insurance system as currently applied fails to cover all wage and salaried employees. Ganem concludes that use of the lower figures would have precluded the Secretary from finding that Iran's social insurance system covers a "substantial portion" of the relevant labor force.

Although Ganem's argument provokes deep reflection, we cannot reverse the Secretary's determination on this ground. The Secretary acted lawfully in choosing to disregard the statistics contained in the three reports. The Secretary averred in her determination that these reports refer to the number of individuals "insured"—*i.e.*, presently entitled to benefits—rather than to the number of individuals "covered"—*i.e.*, potentially entitled to benefits by virtue of contributions. *See id.* at 7–8. We entertain certain doubts about this position. We note that only one of the three reports uses the word "insured" and that the Secretary's claim rests at least partly on speculation. But we cannot describe the Secretary's approach as arbitrary and capricious. The Iranian Social Security Law of 1975 claims to cover all wage and salaried employees, and other governmental documents (including two of the reports to which Ganem points) echo this assertion. The Secretary thus had reason to base her conclusions regarding coverage on the number of wage and salaried employees rather than on the statistics provided in the three reports. In essence, the Secretary faced a conflict in the evidence. Her resolution of this conflict may be debatable, but it is not unlawful under the arbitrary and capricious standard. *Cf. Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 290, 95 S.Ct. 438, 444, 42 L.Ed.2d 447 (1974) (holding that "[w]e can discern in the Commission's opinion a rational basis for its treatment of the evidence, and the 'arbitrary and capricious' test does not require more").

Our own concern focuses on the ratio that the Secretary employed in order to arrive at her determination. The Secretary defined the denominator as the number of individuals engaged in industry and commerce and defined the numerator as the number of individuals covered by the social insurance law. We think the Secretary's definition of the numerator imprecise and incomplete. The relevant regulation, 20 C.F.R. § 404.463(a)(3), directs the Secretary to determine whether a country's social insurance system cover[s] a substantial portion of the paid labor force in industry and commerce." In order to comply properly with this directive, the Secretary must compare the number of individuals engaged in industry and commerce (the denominator) with the number of individuals engaged in industry and commerce who are covered by the social insurance law (the numerator). Thus, in determining the numerator, the Secretary should have subtracted the number of agriculture and forestry workers covered by the social insurance law from the total number of workers covered by the social insurance law (just as in determining the denominator the Secretary did in fact subtract the number of workers engaged in agriculture and forestry from the economically active population). In the case at bar, this calculation is equivalent to subtracting the number of wage and salaried employees engaged in agriculture and forestry from the total number of wage and salaried employees. We view the Secretary's failure to perform this simple arithmetic step as quite troubling; we hope the error does not signify that the Secretary approached this determination without full appreciation of her statutory responsibilities. But we cannot reverse the Secretary's determination be-

cause of this methodological error. We have made the necessary calculations, and we find that in each of the years the Secretary studied, Iran's social insurance system did cover well over half—clearly a "substantial portion"—of the individuals engaged in industry and commerce. The ultimate insignificance of the methodological error precludes us from holding the Secretary's determination arbitrary and capricious on this ground. *Cf. Greater Boston Television Corp. v. FCC,* 444 F.2d 841, 851 (1970) (holding that under the arbitrary and capricious standard, a court cannot "upset a decision because of errors that are not material"), *cert. denied,* 403 U.S. 923, 91 S.Ct. 2233, 29 L.Ed.2d 701 (1971).

■ Ganem also argues that the Secretary's 1985 determination is arbitrary and capricious because it reverses prior agency determinations without explanation. According to Ganem, the Secretary of HHS made determinations in each year between 1975 and 1979 that Iran had no generally applicable social insurance system. In making this argument, Ganem points to the issues of the Code of Federal Regulations, Social Security Claims Manual, and Social Security Rulings that appeared between 1975 and 1979. Ganem notes that each of these publications listed Iran as a country with no generally applicable insurance system and argues that these listings constitute explicit secretarial determinations of the content of Iran's social insurance law. The determination of 1985, Ganem continues, reverses these prior determinations because it found that Iran has had a social insurance system of general application since 1975. This reversal of prior determinations, Ganem concludes, was without explanation and consequently was arbitrary and capricious.

We need not consider whether the Secretary has provided sufficient explanation to justify a reversal, *see generally Atchison, Topeka & Santa Fe Railway Co. v. Witchita Board of Trade,* 412 U.S. 800, 818, 93 S.Ct. 2367, 2380, 37 L.Ed.2d 350 (1973) (discussing the requirement that agencies explain departures from prior rulings), be-

cause we find that Ganem has failed to demonstrate that any reversal occurred. As we have noted, Ganem relies on issues of the Code of Federal Regulations, Social Security Claims Manual, and Social Security Rulings to demonstrate that the Secretary made prior determinations about the post–1975 Iranian insurance system. But the material contained in these publications fails to support Ganem's claim. The publications to which Ganem points list all of the countries that meet the requirements of § 402(t)(4) and all of the countries that fail to meet those requirements. *See* Exhibits D–F of Record Excerpts (unpaginated). We cannot believe that the Secretary makes new determinations about all of these countries prior to each issuance of these publications. We find that the Code of Federal Regulations, Social Security Claims Manual and Social Security Rulings merely republish the results of the most recent secretarial determinations; the Secretary appears to make *new* determinations only when new information or changed circumstances seem to require re-examination of prior decisions, *cf. Ganem v. Heckler,* 746 F.2d at 846 (stating that the Secretary concluded "that the Iranian revolution necessitated a new determination as to whether and what sort of social insurance scheme Iran possessed"). Perhaps the Secretary should have made a new determination immediately after Iran amended its social insurance law in 1975; Ganem is almost certainly correct in stating that the Secretary must have known of the amendments. But Ganem has offered no evidence to show that the Secretary did in fact make a determination about Iran's amended social insurance system prior to the determination of 1985. And because we cannot find that the Secretary ever made a prior determination, we certainly cannot find that the Secretary in 1985 reversed a determination. The notion of a reversal contemplates a prior decision on the same matter; in this case, we find no prior decision that the Secretary could have reversed.

■ Ganem's final argument is that the Secretary's determination is not "in accord-

ance with law," 5 U.S.C. § 706(2)(A), because it conflicts with this court's decision in *Ganem v. Heckler, supra.* According to Ganem, we rested our holding in *Ganem v. Heckler* on the factual finding that Iran under the Shah had no generally applicable social insurance system. In making this argument, Ganem relies primarily on the statement in *Ganem v. Heckler* that "[b]ecause it was determined that no social insurance system existed under the Shah's rule, Ganem received benefit checks in Iran from 1964 until November, 1979." 746 F.2d at 846. Ganem argues that this statement establishes authoritatively that Iran had no generally applicable social insurance system under the Shah. Ganem then claims that because all parties agree that the Ayatollah put no new social insurance system into effect, *Ganem v. Heckler* must also stand for the proposition that Iran under the Ayatollah has no generally applicable social insurance system. Ganem thus concludes that the Secretary's determination runs contrary to settled law.

This argument has no merit. This court in *Ganem v. Heckler* decided nothing about the Shah's insurance system, much less the Ayatollah's. The statement upon which Ganem relies merely reflects the court's assumption that the Secretary's determination of 1968 remained accurate throughout the Shah's tenure and that any future change in the determination would arise from acts of the Ayatollah. The statement clearly does not constitute a holding. The court in *Ganem v. Heckler* was not called upon to decide what kind of insurance system Iran possessed, and the court did not in fact decide this question. The court decided only that the Secretary could not, consistent with her statutory responsibilities, insist that a new determination was necessary and yet refuse to make that determination because of the absence of direct contact between the governments of the United States and Iran. We therefore reject Ganem's argument that the secretarial determination under review is at odds with *Ganem v. Heckler,* and we uphold the decision of the district court approving that determination.

*It is so ordered.*