_____

No. 96-1561
_____

Clarinda Home Health, formerly   *
known as Nodaway Valley       *
Skilled Services, Inc.; Jay     *
Eickemeyer,               *
                        *
        Appellants,   *
                        *  Appeal from the United States
   v.                *  District Court for the
                        *  Southern District of Iowa.
Donna Shalala, Secretary of   *
Health and Human Services;    *
Medicare IASD Health Services  *
Corporation,             *
                        *
        Appellees.    *

_____

Submitted:  June 13, 1996

Filed:  November 18, 1996
_____

Before BEAM, JOHN R. GIBSON, and HANSEN, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.


     Clarinda Home Health and Jay Eickemeyer appeal from an order of the
district court denying their motion for a preliminary injunction
restraining Donna Shalala, Secretary of Health and Human Services, and
Medicare IASD Health Services Corporation from suspending Medicare payments
to Clarinda Home Health without a hearing.  The district court denied the
claim for injunctive relief because of Clarinda's failure to show a
probability that it would succeed on the merits of either its procedural
due process liberty interest claim or its procedural due process property
interest

claim. On appeal, Clarinda makes numerous claims of error, and the Secretary responds that the courts are without jurisdiction to consider Clarinda's claims. We granted Clarinda's motion for injunctive relief enjoining the Secretary from suspending past and future Medicare payments during the pendency of this appeal. We conditioned this grant of injunctive relief upon Clarinda's posting of a bond in an amount and under the terms and conditions as set by the district court, with which Clarinda successfully complied. We dismiss this appeal and vacate the stay pending appeal for want of subject matter jurisdiction and direct the district court to dismiss the complaint for want of subject matter jurisdiction.

There is little dispute as to the facts. Clarinda Home Health, formerly known as Nodaway Valley Skilled Services, Inc., provided health services to elderly and handicapped persons in southern Iowa. In May of 1993 Clarinda Home Health was certified by Medicare to be reimbursed for health care supplies, products, and services provided to its patients who qualified for Medicare benefits. On December 21, 1995, Medicare IASD Health Services Corporation, Clarinda's intermediary, notified Clarinda that an investigation was being conducted for acts of fraud and/or willful misrepresentation, and that it was suspending all payments to Clarinda for services billed to the Medicare program. The notification letter stated that an investigation by the United States Department of Justice and the Federal Bureau of Investigation had produced reliable evidence that Nodaway Valley Skilled Services, Inc. (Clarinda) may have committed acts of fraud and/or willful misrepresentation regarding claims submitted for Medicare reimbursement. As a result, Clarinda's intermediary withheld payments totalling nearly $65,000 for Medicare services already rendered by Clarinda.

Clarinda sought injunctive relief to enjoin the Secretary and Medicare IASD Health Services Corporation from suspending Medicare payments to Clarinda without a hearing. The district court

recognized that 42 C.F.R. § 405.371(b) (1995), which authorizes suspension of payment where authorities have obtained reliable evidence of fraud or willful misrepresentation, provided the authority for the decision to suspend payment.

The district court conducted the four-part inquiry outlined in Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc), and denied relief. It first determined that the suspension would cause irreparable harm to the plaintiffs. Next, it found that Clarinda's interest in the potential closing of its business outweighed the government's interest in prohibiting fraudulent Medicare payments. The district court then looked to the merits of Clarinda's due process claims and determined that there was no probability that Clarinda would succeed on these claims. Finally, because the court found that other providers could care for Clarinda's patients if Clarinda was no longer able to provide services, the court rejected Clarinda's argument that the grant of an injunction would serve the public interest.

Clarinda makes numerous claims of error with respect to the district court's order, but in view of our conclusion that the Secretary properly has raised an issue as to our jurisdiction over the subject matter of Clarinda's suit, we need not consider those arguments. We review the question of subject matter jurisdiction de novo. See Drevlow v. Lutheran Church, Missouri Synod, 991 F.2d 468, 470 (8th Cir. 1993).

Before the district court's ruling, the Secretary filed a motion to dismiss this action, asserting that the district court lacked jurisdiction to hear Clarinda's suit. The district court, however, did not rule on this motion before proceeding to the merits. The Secretary raises the lack of jurisdiction again before this court.

The Secretary points to 42 U.S.C. § 405(h) (1994) which

specifically exempts 28 U.S.C. § 1346 (1994) as a jurisdictional basis for actions arising under the Social Security Act, and explains that this preclusive section has been incorporated into the Medicare Act by reference through 42 U.S.C. § 1395ii (1994).  Next, the Secretary points to <u>Heckler v. Ringer</u>, 466 U.S. 602 (1984), which dealt specifically with the Medicare provisions of the Social Security Act, and argues that the temporary withholding of Medicare payments is not a final decision subject to judicial review under 42 U.S.C. § 405(g) (1994).  Clarinda responds that the district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1336 (1994) and that this Court now has subject matter jurisdiction based on 28 U.S.C. § 1291 (1994).

**I.**

The Medicare program is divided into two parts.  42 U.S.C. §§ 1395-1395ccc (1994).  Part A of the program deals with hospitalization benefits.  Part B of the program is a supplementary medical insurance program for the aged and disabled.  To administer the Medicare program, Congress has authorized the Secretary to enter into contracts with companies, known as "carriers," to perform actions on behalf of the Secretary.  42 U.S.C. § 1395u.  Carriers are authorized to complete several tasks including: determining the rates and proper payment amounts to providers of services; auditing the records of providers; and receiving and accounting for payments made to providers.

The regulation at issue in this lawsuit, 42 C.F.R. § 405.371(b), allows the carrier to suspend payment to the provider where the carrier has reliable evidence of willful misrepresentation or fraud.  Section 405.371(b) supplied the authority to suspend payments to Clarinda.  This section provides:

> (b)  <u>Fraud or misrepresentation</u>.  The provisions of paragraph (a) of this section [allowing for notice

and an opportunity to respond] shall not apply where the intermediary or carrier has reliable evidence that the circumstances giving rise to the need for a suspension of payments involves fraud or willful misrepresentation. Instead, the intermediary or carrier may suspend payments without first notifying the provider or other supplier of an intention to suspend payments.

Under this provision, authorities are not required to give a provider prior notice of the suspension of payments and the provider has no right to the payments or a hearing while the Secretary investigates the underlying charges. Upon the conclusion of the investigation, the intermediary transfers the withheld funds to the provider if the investigation failed to establish evidence of fraud. Notably, the temporary withholding of payments pursuant to 42 C.F.R. § 405.371(b) is not a final determination of exclusion from the Medicare program, but instead is a provision designed to protect the government from suffering greater losses. If authorities establish evidence of fraud, the Secretary may then make a final determination to exclude the provider from the Medicare program. After the Secretary's final determination, authorities must supply the provider with notice of the proposed action and a hearing. 42 C.F.R. §§ 1001, 1005 (1994). Following this hearing, if the Department concludes that exclusion is the appropriate sanction, the Secretary is required to provide "reasonable notice to the public." 42 U.S.C. § 1320a-7(c)(1) (1994). The excluded party is then entitled to notice and judicial review pursuant to 42 U.S.C. § 405(g).

## II.

We must determine whether subject matter jurisdiction exists over Clarinda's claim. We first look to the provisions of 42 U.S.C. § 405(h). This section is part of the Social Security Act, but is incorporated into the Medicare Act by 42 U.S.C. § 1395ii. Section 405(h) provides:

The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under sections 1331 or 1346 of title 28 to recover on any claim arising under this subchapter.

The scope of section 405(h) has been the subject of much litigation. The Supreme Court has held that section 405(h) "extends to any action seeking to recover on any Social Security claim." Weinberger v. Salfi, 422 U.S. 749, 762 (1975). The considerations behind the Social Security Act that led Congress to limit judicial review are also applicable to the Medicare program. St. Louis Univ. v. Blue Cross Hosp. Serv., 537 F.2d 283, 289 (8th Cir.), cert. denied, 429 U.S. 977 (1976). The Supreme Court further considered the scope of this section in Heckler v. Ringer, 466 U.S. 602 (1984), and determined that claims arising under other statutes may be barred by section 405(h) if they are "inextricably intertwined" with benefit determinations under the Medicare Act. Id. at 622-24. In Ringer, the Medicare claimants challenged the Secretary's final decision prohibiting reimbursement for bilateral carotid body claims on the grounds that the Secretary's decision violated the Medicare Act, the Administration Procedure Act, and the Due Process Clause. The Court looked behind the face of the claims and found that the plaintiffs' claim was, "at bottom, a claim that they should be paid for their . . . surgery." 466 U.S. at 614. The Court concluded, therefore, that the claim was "inextricably intertwined" with the claim for benefits, and accordingly, was barred from judicial review by section 405(h). Id.

Though section 405(h) seems to be a conclusive bar of jurisdiction over Medicare claims, section 405(g), after requiring

-6-

exhaustion of administrative avenues of relief, limits the preclusive effect of section 405(h). Section 405(g) states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow. . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

The scope of section 405(g) has also been the subject of much litigation. Ganem v. Heckler, 746 F.2d 844 (D.C. Cir. 1984), provides a good description of the finality requirement. Ganem brought an action to recover Social Security benefits owed to her because of her deceased husband's employment record in the United States for the period lasting from November of 1979 to March of 1984. Id. at 846. During this time Ganem, an Iranian citizen, was living in Iran. The Social Security Act allows nonresident beneficiaries to receive benefits if they live in a country which has a social insurance program that does not discriminate against Americans. See 42 U.S.C. § 402(t)(2) (1994).

Following the Iranian revolution, the Social Security Administration suspended benefit payments to residents of Iran because it claimed it was necessary to redetermine whether the Iranian social insurance scheme now discriminated against Americans. Ganem, 746 F.2d at 846. The Administration argued that the lengthy suspension was unavoidable because tense relations between the United States and Iran prohibited the Secretary from making a final determination regarding Iran's social insurance scheme.

Before reaching the merits, the court considered whether it had subject matter jurisdiction over the claim.  The court held that section 405(h) precluded it from having subject matter jurisdiction over Ganem's claims.  In continuing its analysis of subject matter jurisdiction, the court turned to 405(g) and concluded that section 405(g) did not provide an avenue around the jurisdictional bar of 405(h) because Ganem had not yet received a final decision on her benefit claims.  Id. at 849.

> The Secretary has not permanently cancelled benefits to Ganem; instead, those benefits have been merely suspended pending the necessary determination regarding Iranian law. . . . [I]f it is found that Iran does not have a social insurance scheme that discriminates against Americans, appellant will be entitled to past suspended benefit payments.  Under these circumstances, it would strain the meaning of finality past the breaking point to hold that the Secretary has finally decided that Ganem is not entitled to the contested benefits. . . . As a result, there is as of now no final decision on Ganem's benefit claim that would trigger jurisdiction under 405(g). . . .

Id. at 849-50.

Likewise, in this case, there has been no final determination of whether the payments will eventually be made to Clarinda.  Instead, the payments have been only temporarily suspended during an ongoing fraud investigation.  Upon the conclusion of the investigation, if it is determined that Clarinda did not commit any fraudulent acts, the withheld funds will be immediately dispersed to Clarinda.  The withholding is nothing more than a temporary measure necessary to maintain the status quo while the necessary facts are gathered and evaluated.

If the Secretary finds evidence of fraud, the Secretary may then make a final determination to exclude Clarinda from the Medicare program.  After the Secretary's final determination,

Clarinda will be given notice and a hearing.  If the Secretary's decision is upheld, Clarinda then will be entitled to notice, a post-exclusion hearing pursuant to 42 U.S.C. § 405(b), and judicial review pursuant to 42 U.S.C. § 405(g).  Therefore, Clarinda will have its day in court after the Secretary has rendered her final decision.

Though the statutory framework provides no relief to Clarinda, this Circuit previously has recognized a constitutional exception to the statutory exhaustion requirement, thus our analysis does not stop here. This exception applies where the litigant:  "(1) raises a colorable constitutional claim collateral to his substantive claim of entitlement; (2) shows that irreparable harm would result from exhaustion; and (3) shows that the purposes of exhaustion would not be served by requiring further administrative procedures."  Anderson v. Sullivan, 959 F.2d 690, 693 (8th Cir. 1992) (citing Thorbus v. Bowen, 848 F.2d 901, 903 (8th Cir. 1988), and Mathews v. Eldridge, 424 U.S. 319, 329-31 (1976)).

In Anderson, a physician, Anderson, brought an action to compel the government to maintain his Medicare reimbursement eligibility while his appeals from exclusion from the Medicare program were pending.  Anderson argued that he satisfied the three-part test for the exhaustion exception. This court rejected his argument, however, holding that Anderson had not shown a colorable constitutional claim because the procedures established for excluding a physician from the Medicare program did not violate due process.  959 F.2d at 693 (citing Thorbus, 848 F.2d at 903-04). Secondly, Anderson had presented no evidence that exhausting his administrative appeals would cause him irreparable injury.  Id.  Finally, Anderson had offered no evidence that the strong policy interests behind exhaustion would not be advanced in his case.  Id.

The factual situation in this case differs somewhat from Anderson. At issue here is not the exclusion of Clarinda from the

Medicare program, but the temporary suspension of Medicare payments to Clarinda during an ongoing investigation for acts of fraud and misrepresentation. Nevertheless, the reasoning of Anderson applies to Clarinda's claims. If Anderson did not prove that the exclusion of a physician from the Medicare program without a hearing was a colorable constitutional due process claim, it likewise is not a colorable constitutional violation of due process to withhold payments temporarily to a provider without a hearing. The private interest that will be affected by a temporary withholding of Medicare payments is not as serious in nature as an exclusion from the Medicare program. Because Clarinda has less of an interest in having its claim resolved than a provider who had been suspended from the program entirely would have, we hold that it is not a violation of due process to temporarily withhold Medicare payments during an ongoing investigation for acts of fraud.

A Fifth Circuit decision, Peterson v. Weinberger, 508 F.2d 45 (5th Cir.), cert. denied, 423 U.S. 830 (1975), supports our decision today. In Peterson, authorities investigated Peterson, a physician, for acts of fraud and misrepresentation. Id. at 48-49. During the investigation, Medicare payments to Peterson were temporarily suspended. Id. at 49. Peterson brought suit alleging, among other things, that his property was taken without due process. The Fifth Circuit rejected Peterson's argument, determining that a Medicare provider has no due process right to a hearing during the course of an investigation for acts of fraud and misrepresentation. Id. at 50.

Because Clarinda has failed to establish that the temporary suspension of Medicare payments without a hearing is a colorable constitutional claim, it has failed the first part of the test for an exception to the exhaustion requirement. It therefore is unnecessary to consider the second and third parts of the test.

Accordingly, we have no subject matter jurisdiction over this appeal and the district court had no jurisdiction to consider Clarinda's motion for an injunction. We dismiss this appeal, vacate the stay pending appeal, and remand to the district court with direction that it dismiss the complaint and make what orders may be appropriate with respect to termination of the bond.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT