# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued April 16, 2015              Decided June 9, 2015

No. 14-1112

IN RE: MURRAY ENERGY CORPORATION,
PETITIONER

———

Consolidated with 14-1151

———

On Petition For Writ of Prohibition
and On Petition For Review

———

No. 14-1146

STATE OF WEST VIRGINIA, ET AL.,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

CITY OF NEW YORK, ET AL.,
INTERVENORS

———

On Petition for Review of an Order of the
United States Environmental Protection Agency

*Elbert Lin*, Solicitor General, Office of the Attorney General for the State of West Virginia, argued the cause for Petitioner-Intervenors States. With him on the briefs were *Patrick Morrisey*, Attorney General, *Misha Tseytlin*, General Counsel, *J. Zak Ritchie*, Assistant Attorney General, *Luther Strange*, Attorney General, Office of the Attorney General for the State of Alabama, *Andrew Brasher*, Solicitor General, *Craig W. Richards*, Attorney General, Office of the Attorney General for the State of Alaska, *Steven E. Mulder*, Senior Assistant Attorney General, *Gregory F. Zoeller*, Attorney General, Office of the Attorney for the State of Indiana, *Timothy Junk*, Deputy Attorney General, *Derek Schmidt*, Attorney General, Office of the Attorney General for the State of Kansas, *Jeffrey A. Chanay*, Deputy Attorney General, *Jack Conway*, Attorney General, Office of the Attorney General for the Commonwealth of Kentucky, *Doug Peterson*, Attorney General, Office of the Attorney General for the State of Nebraska, *Blake E. Johnson*, Assistant Attorney General, *Michael DeWine*, Attorney General, Office of the Attorney General for the State of Ohio, *Eric E. Murphy*, State Solicitor, *E. Scott Pruitt*, Attorney General, Office of the Attorney General for the State of Oklahoma, *Patrick R. Wyrick*, Solicitor General, *P. Clayton Eubanks*, Deputy Solicitor General, *Alan Wilson*, Attorney General, Office of the Attorney General for the State of South Carolina, *James Emory Smith, Jr.*, Deputy Solicitor General, *Peter K. Michael*, Attorney General, Office of the Attorney General for the State of Wyoming, *James Kaste*, Deputy Attorney General, *Michael J. McGrady*, Senior Assistant Attorney General, *Jeremiah I. Williamson*, Assistant Attorney General, *James D. "Buddy" Caldwell*, Attorney General, Office of the Attorney General for the State of Louisiana, *Megan K. Terrell*, Deputy Director, *Marty J. Jackley*, Attorney General, Office of the Attorney General for the State of South Dakota, and *Roxanne*

*Giedd*, Deputy Attorney General at the time the brief was filed. *C. Joseph Cordi Jr.*, Senior Assistant Attorney General, Office of the Attorney General for the State of Arkansas, *Steven R. Blair*, Assistant Attorney General, Office of the Attorney General for the State of South Dakota, *Steven B. Jones*, Assistant Attorney General, Office of the Attorney General for the State of Louisiana, *Daniel P. Lennington*, Assistant Attorney General, Office of the Attorney General for the State of Wisconsin, and *Katherine Jean Spohn*, Deputy Attorney General, Office of the Attorney General for the State of Nebraska, entered appearances.

*Geoffrey K. Barnes* argued the cause for Petitioner Murray Energy Corporation. With him on the briefs were *J. Van Carson*, *Wendlene M. Lavey*, *John D. Lazzaretti*, and *Robert D. Cheren*. *Rebecca A. Worthington* entered an appearance.

*Laurence H. Tribe* argued the case for Petitioner-Intervenor Peabody Energy Corporation. With him on the briefs were *Jonathan S. Massey*, *Tristan L. Duncan*, and *Thomas J. Grever*.

*Robert R. Gasaway*, *Dominic E. Draye*, *Allison D. Wood*, *Tauna M. Szymanski*, *C. Boyden Gray*, and *Adam Gustafson* were on the briefs for Intervenor-Petitioners National Federation of Independent Business and Utility Air Regulatory Group.

*Peter D. Keisler*, *Roger R. Martella, Jr.*, *C. Frederick Beckner III*, *Paul J. Ray*, *Joshua Thompson*, *Leslie A. Hulse*, *Linda E. Kelly*, *Quentin Riegel*, *Steven P. Lehotsky*, *Sheldon Gilbert*, and *Richard Moskowitz* were on the briefs for *amici curiae* Trade Associations and Pacific Legal Foundation in support of petitioners.

*Peter S. Glaser* and *Carroll W. McGuffey* were on the brief for *amici curiae* the National Mining Association and the American Coalition for Clean Coal Electricity.

*Brian H. Lynk* and *Amanda Shafer Berman*, Attorneys, U.S. Department of Justice, argued the causes for respondents. With them on the briefs were *John C. Cruden*, Assistant Attorney General, and *Elliott Zenick* and *Scott Jordan*, Attorneys, U.S. Environmental Protection Agency.

*Morgan A. Costello*, Assistant Attorney General, Office of the Attorney General for the State of New York, argued the cause for Respondent-Intervenors States. With her on the briefs were *Eric T. Schneiderman*, Attorney General, Office of the Attorney General for the State of New York, *Barbara D. Underwood*, Solicitor General, *Steven C. Wu*, Deputy Solicitor General, *Michael J. Myers* and *Brian Lusignan*, Assistant Attorneys General, *Kamala D. Harris*, Attorney General, Office of the Attorney General for the State of California, *David A. Zonana*, Acting Supervising Deputy Attorney General, *M. Elaine Meckenstock*, *Elizabeth B. Rumsey*, *Timothy E. Sullivan*, and *Raissa Lerner*, Deputy Attorneys General, *George Jepsen*, Attorney General, Office of the Attorney General for the State of Connecticut, *Kimberly P. Massicotte* and *Scott N. Koschwitz*, Assistant Attorneys General, *Matthew P. Denn*, Attorney General, Office of the Attorney General for the State of Delaware, *Valerie M. Edge*, Deputy Attorney General, *Maura Healey*, Attorney General, Office of the Attorney General for the Commonwealth of Massachusetts, *Melissa A. Hoffer* and *Turner Smith*, Assistant Attorneys General, *Janet T. Mills*, Attorney General, Office of the Attorney General for the State of Maine, *Gerald D. Reid*, Natural Resources Division Chief, *Douglas F. Gansler*, Attorney General at the time the brief

was filed, Office of the Attorney General for the State of Maryland, *Mary Raivel*, Assistant Attorney General, *Hector Balderas*, Attorney General, Office of the Attorney General for the State of New Mexico, *Tannis Fox*, Assistant Attorney General, *Ellen F. Rosenblum*, Attorney General, Office of the Attorney General for the State of Oregon, *Paul Garrahan*, Acting Attorney-in-Charge, *Peter Kilmartin*, Attorney General, Rhode Island Department of Attorney General, *Gregory S. Schultz*, Assistant Attorney General, *William H. Sorrell*, Attorney General, Office of the Attorney General for the State of Vermont, *Thea Schwartz*, Assistant Attorney General, *Robert W. Ferguson*, Attorney General, Office of the Attorney General for the State of Washington, *Leslie R. Seffern*, Assistant Attorney General, *Karl A. Racine*, Attorney General, Office of the Attorney General for the District of Columbia, *Amy McDonnell*, General Counsel, and *Carrie Noteboom*. *Carol A. Iancu*, Assistant Attorney General, Office of the Attorney General for the Commonwealth of Massachusetts, and *Christopher G. King*, entered appearances.

*Sean H. Donahue* argued the cause for Respondent-Intervenors NGOs. With him on the briefs were *David Doniger*, *Benjamin Longstreth*, *Tomás Carbonell*, *Vickie Patton*, *Joanne Spalding*, *Andres Restrepo*, and *Ann Brewster Weeks*. *Megan Ceronsky* entered an appearance.

*Katherine E. Konschnik* was on the brief for *amicus curiae* Law Professors in support of respondents.

*Kevin Poloncarz* was on the brief for *amicus curiae* Calpine Association in support of respondents.

*Richard L. Revesz* and *Denise A. Grab* were on the brief for *amicus curiae* Institute for Policy Integrity at New York University School of Law in support of respondent.

Before: HENDERSON, GRIFFITH, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH, with whom *Circuit Judge* GRIFFITH joins.

Opinion concurring in the judgment filed by *Circuit Judge* HENDERSON.

KAVANAUGH, *Circuit Judge*: Petitioners are champing at the bit to challenge EPA's anticipated rule restricting carbon dioxide emissions from existing power plants. But EPA has not yet issued a final rule. It has issued only a proposed rule. Petitioners nonetheless ask the Court to jump into the fray now. They want us to do something that they candidly acknowledge we have never done before: review the legality of a *proposed* rule. But a proposed rule is just a proposal. In justiciable cases, this Court has authority to review the legality of final agency rules. We do not have authority to review proposed agency rules. In short, we deny the petitions for review and the petition for a writ of prohibition because the complained-of agency action is not final.

\* \* \*

On June 18, 2014, as part of the Executive Branch's efforts to tackle global warming, EPA proposed a rule to restrict carbon dioxide emissions from existing coal-fired and natural gas-fired power plants. *See* 79 Fed. Reg. 34,830, 34,830 (June 18, 2014). In the preamble to the proposed rule and in other statements about the proposed rule, EPA has

explained that Section 111(d) of the Clean Air Act supplies legal authority for EPA to restrict those emissions. *See, e.g.*, *id.* at 34,852-53; *see also* 42 U.S.C. § 7411(d) (codifying Section 111(d) of the Clean Air Act).

EPA published the proposed rule in the Federal Register and invited "further input through public comment on all aspects of this proposal." *Id.* at 34,835. The comment period has now closed, and EPA has received over two million comments. EPA has not yet issued a final rule but intends to do so this summer.

Petitioners here are Murray Energy Corporation, which is a coal company whose business would be negatively affected by a restriction on carbon dioxide emissions from coal-fired power plants, and the States of West Virginia, Alabama, Indiana, Kansas, Kentucky, Louisiana, Nebraska, Ohio, Oklahoma, South Carolina, South Dakota, and Wyoming. Shortly after EPA issued its proposed rule, petitioners filed suit. According to petitioners, Section 111(d) of the Clean Air Act does not grant EPA authority to limit carbon dioxide emissions from existing power plants. For that reason, petitioners ask the Court to enjoin EPA from issuing a final rule limiting those carbon dioxide emissions.

In effect, petitioners are asking us to review the legality of a proposed EPA rule so as to prevent EPA from issuing a final rule. But as this Court has stated, a proposed EPA rule "is not final agency action subject to judicial review." *Las Brisas Energy Center, LLC v. EPA*, No. 12-1248, 2012 WL 10939210 (D.C. Cir. 2012). We may review final agency rules. *See generally Abbott Laboratories v. Gardner*, 387 U.S. 136, 149-52 (1967). But we do not have authority to review proposed rules. *See* 42 U.S.C. § 7607(b)(1) (Clean Air Act) ("A petition for review of action of the Administrator in

promulgating . . . any standard of performance or requirement under section 7411 of this title . . . or any other nationally applicable regulations promulgated, or final action taken, by the Administrator under this chapter may be filed . . . ."); *cf.* 5 U.S.C. § 704 (Administrative Procedure Act) ("Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.").

Proposed rules meet neither of the two requirements for final agency action:  (i) They are not the "consummation of the agency's decisionmaking process," and (ii) they do not determine "rights or obligations," or impose "legal consequences."  *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks omitted); *see also American Portland Cement Alliance v. EPA*, 101 F.3d 772, 777 (D.C. Cir. 1996) ("a proposed regulation is still in flux," so "review is premature") (internal quotation marks omitted); *Action on Smoking and Health v. Department of Labor*, 28 F.3d 162, 165 (D.C. Cir. 1994) ("Agency action is final when it imposes an obligation, denies a right, or fixes some legal relationship," and an agency's "proposed rulemaking generates no such consequences.") (internal quotation marks omitted).

In an attempt to clear this hurdle to their suit, petitioners advance three different arguments.  None is persuasive.

*First*, petitioners contend that this Court has authority under the All Writs Act to consider their challenge now, even before EPA issues a final rule.  The All Writs Act provides that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  Although "the All Writs Act authorizes employment of extraordinary writs, it confines the

authority to the issuance" of writs "in aid of the issuing court's jurisdiction." *In re Tennant*, 359 F.3d 523, 527 (D.C. Cir. 2004) (internal quotation marks omitted).

In this case, a writ is not necessary or appropriate to aid the Court's jurisdiction. After EPA issues a final rule, parties with standing will be able to challenge that rule in a pre-enforcement suit, as well as to seek a stay of the rule pending judicial review. At that time (which will not be very long from now, according to EPA), the Court will have an opportunity to review the legality of the rule.

Petitioners contend, however, that we should consider their challenge now because they are already incurring costs in preparing for the anticipated final rule. And petitioners say that the Court will not be able to fully remedy that injury if we do not hear the case at this time. But courts have never reviewed *proposed* rules, notwithstanding the costs that parties may routinely incur in preparing for anticipated final rules. We recognize that prudent organizations and individuals may alter their behavior (and thereby incur costs) based on what they think is likely to come in the form of new regulations. But that reality has never been a justification for allowing courts to review proposed agency rules. We see no persuasive reason to blaze a new trail here.

In short, the All Writs Act does not authorize a court to circumvent bedrock finality principles in order to review proposed agency rules. *See Pennsylvania Bureau of Correction v. U.S. Marshals Service*, 474 U.S. 34, 43 (1985) (All Writs Act "does not authorize" courts "to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate"); *Schlagenhauf v. Holder*, 379 U.S. 104, 110 (1964) ("It is, of course, well settled" that a

writ "is not to be used as a substitute for appeal, even though hardship may result from delay.") (internal citation omitted).

*Second*, petitioners argue that EPA's public statements about its legal authority to regulate carbon dioxide emissions constitute final agency action subject to judicial review. As petitioners correctly note, EPA has repeatedly and unequivocally asserted that it has authority under Section 111(d) to restrict carbon dioxide emissions from existing power plants. EPA has made such statements in the preamble to the proposed rule, in a legal memorandum accompanying the proposed rule, and in other public remarks discussing the proposed rule. *See, e.g.*, 79 Fed. Reg. at 34,853.

But those EPA statements are not final agency action. As noted above, to be final an agency action must meet two requirements. First, the agency action must constitute "the consummation of the agency's decisionmaking process." *Bennett*, 520 U.S. at 177-78 (internal quotation marks omitted). Second, the agency action must be one "by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* (internal quotation marks omitted).

Here, neither of those standard finality requirements is met.

In the context of an ongoing rulemaking, an agency's statement about its legal authority to adopt a proposed rule is not the "consummation" of the agency's decisionmaking process. Formally speaking, such a statement is a proposed view of the law. Indeed, EPA recognized as much in this instance when it asked for "further input through public comment on *all* aspects" of the agency's proposal. 79 Fed. Reg. at 34,835 (emphasis added). Put simply, the

consummation of the agency's decisionmaking process with respect to a rule occurs when the agency issues the rule.

Moreover, even if EPA's position on its legal authority is set in stone, the agency's statements about its legal authority – unconnected to any final rule or other final agency action – do not impose any legal obligations or prohibitions on petitioners. Any such legal obligations or prohibitions will be established, and any legal consequences for violating those obligations or prohibitions will be imposed, only after EPA finalizes a rule.

In short, EPA's statements about its legal authority under Section 111(d) meet neither of the requirements for final agency action.

*Third*, no doubt recognizing the problems with their attempt to challenge a proposed rule (including the lack of precedent supporting judicial review of a proposed rule), the State petitioners separately challenge a 2011 settlement agreement that EPA reached with several other States and environmental groups. By challenging that settlement agreement, the State petitioners hope to obtain a backdoor ruling from the Court that EPA lacks legal authority under Section 111(d) to regulate carbon dioxide emissions from existing power plants. But the settlement agreement did not obligate EPA to issue a final rule restricting carbon dioxide emissions from existing power plants. It simply set a timeline for EPA to decide *whether* to do so. As our precedent makes clear, a settlement agreement that does nothing more than set a timeline for agency action, without dictating the content of that action, does not impose an injury in fact on entities that are not parties to the settlement agreement. *See Defenders of Wildlife v. Perciasepe*, 714 F.3d 1317, 1324-25 (D.C. Cir. 2013). State petitioners therefore lack standing to challenge

the settlement agreement. Moreover, State petitioners' challenge to the settlement agreement is untimely. They had to file suit within 60 days after EPA published notice of the settlement agreement in the Federal Register. *See* 42 U.S.C. § 7607(b)(1). They did not file suit until 2014, more than two years after publication.

\* \* \*

We deny the petitions for review and the petition for a writ of prohibition.

*So ordered.*

KAREN LeCRAFT HENDERSON, *Circuit Judge*, concurring in the judgment:  I agree that the petitioners in No. 14-1146 do not have standing to challenge the settlement agreement.  I also agree that we do not have jurisdiction to hear the petition for review in No. 14-1151 because the proposed rule that the petitioners challenge is non-final agency action.  And while I too would deny the application for a writ of prohibition in No. 14-1112, I write separately to distance myself from my colleagues' cramped view of our extraordinary writ authority.

The All Writs Act gives this Court the power to issue "all writs necessary or appropriate in aid of [its] respective jurisdiction[] and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  The Act confines the power to grant writs "to the issuance of process 'in aid of' the issuing court's jurisdiction.  The Act does not enlarge that jurisdiction."  *In re Tennant*, 359 F.3d 523, 527 (D.C. Cir. 2004) (Roberts, J.) (alterations omitted).  The Act's language means that this Court may grant a writ in "those cases which are within [the] court's appellate jurisdiction although no appeal has been perfected."  *Id*. at 528 (alteration omitted).  In other words, once an agency has initiated "a proceeding of *some* kind" that may result in an appeal to this Court, that matter is "within our appellate jurisdiction—however prospective or potential that jurisdiction might be."  *Id*. at 529 (quotation mark and alteration omitted).  Jurisdiction to issue a writ therefore lies "in the court that would have authority to review the agency's final decision."  *Id*. at 531.

We have jurisdiction here to issue a writ of prohibition.  The EPA initiated a rulemaking by publishing a proposed rule.  *See generally* 79 Fed. Reg. 34,830 (June 18, 2014).  This proceeding will result in a final rule that may be challenged on direct review in this Court.  *See id.* at 34,838 ("[T]he EPA expects to finalize this rulemaking by June 1, 2015."); 42 U.S.C. § 7607(b)(1) ("A petition for review of . . . any standard of performance or requirement under section

7411 of this title . . . may be filed only in the United States Court of Appeals for the District of Columbia." (footnote omitted)). Consequently, because this Court "would have authority to review the agency's final decision," we have authority to issue a writ of prohibition in the interim. *Tennant*, 359 F.3d at 531; *see also FTC v. Dean Foods Co.*, 384 U.S. 597, 603 (1966) (authority to grant writ "extends to the potential jurisdiction of the appellate court where an appeal is not then pending but may be later perfected").

We retain jurisdiction to issue writs despite the Clean Air Act's limitation on judicial review. *See* 42 U.S.C. § 7607(e). "The All Writs Act invests a court with a power essentially equitable." *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999). Subject to constitutional limitations, the Congress may strip federal courts of their equitable authority under the All Writs Act. *See United States v. Philip Morris USA, Inc.*, 396 F.3d 1190, 1197 (D.C. Cir. 2005) (court should not "expand upon our equitable jurisdiction if . . . we are restricted by the statutory language"); *Cobell v. Norton*, 240 F.3d 1081, 1108 (D.C. Cir. 2001) (courts "possess the full range of remedial powers" unless statute "restrict[s] their exercise"). But to properly restrict a court's equitable power, a statute must do so plainly and unequivocally. *See Weinberger v. Romero-Barcleo*, 456 U.S. 305, 313 (1982) ("Unless a statute in so many words, or by a necessary and inescapable inference, restricts the court's jurisdiction in equity, the full scope of that jurisdiction is to be recognized and applied."); *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979) (courts retain equitable powers "[a]bsent the clearest command to the contrary from Congress"); *Dean Foods Co.*, 384 U.S. at 608 (courts retain authority under All Writs Act "[i]n the absence of *explicit* direction from Congress" (emphasis added)).

The Clean Air Act provides that "[n]othing in this chapter shall be construed to authorize judicial review of regulations or orders of the Administrator under this chapter, except as provided in this section." 42 U.S.C. § 7607(e). This language falls far short of an "explicit direction" to limit our authority under the All Writs Act. *Dean Foods Co.*, 384 U.S. at 608. Section 7607(e) mentions neither writ authority nor our traditional equitable powers. The failure to include mandamus relief or a phrase of similar ilk is critical. In *Ganem v. Heckler*, 746 F.2d 844 (D.C. Cir. 1984), we held that the relevant statute's failure to "mention . . . the uncodified mandamus jurisdiction of the District of Columbia courts" counseled *against* the conclusion that mandamus jurisdiction was lacking. *Id*. at 851. Without an explicit command that jurisdiction under the All Writs Act had been withdrawn, we found it implausible that the court's equitable powers had been restricted. *See id*. And although we did not say so explicitly, the conclusion is supported by the basic canon of statutory construction that "we do not lightly assume that Congress meant to restrict the equitable powers of the federal courts." *Miller v. French*, 530 U.S. 327, 336 (2000).

Moreover, we noted in *Ganem* that the Congress "knows how to withdraw a particular remedy," such as the right to a writ of prohibition, when it wants to do so. 746 F.2d at 852. When a court fails to construe a statute as stripping its jurisdiction to issue writs, the Congress has responded by explicitly eliminating that equitable authority. *See id*. (citing 84 Stat. 790, that "no other official or any court of the United States shall have power or jurisdiction to review any . . . decision by an action *in the nature of mandamus* or otherwise"); *see id*. ("The fact that Congress knows how to withdraw a particular remedy and has not expressly done so is some indication of a congressional intent to preserve that remedy."). Because section 7607(e) does not speak to our

4

writ or equitable powers, there is no "necessary and inescapable inference" that our power has been circumscribed.[1] *Weinberger*, 456 U.S. at 313. I do not read the majority opinion to suggest otherwise.

Nevertheless, simply because we have *jurisdiction* to grant a writ of prohibition does not mean that it is always

---

[1] The following is a non-exhaustive list of statutes that take away the court's authority. 5 U.S.C. § 8128(b)(2) ("The action of the Secretary [of Labor] or his designee . . . is not subject to review by another official of the United States or by a court by mandamus or otherwise."); 8 U.S.C. § 1252(a)(2)(A) ("[n]otwithstanding any other provision of law (statutory or nonstatutory) . . . or . . . [the All Writs Act], no court shall have jurisdiction to review" various immigration orders); 38 U.S.C. § 511(a) ("[T]he decision of the Secretary [of Veterans Affairs]. . . shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise."); 42 U.S.C. § 1715 ("The action of the Secretary [of Labor] . . . shall be final and conclusive on all questions of law and fact and not subject to review by any other official of the United States or by any court by mandamus or otherwise"). We have assumed that extraordinary relief is available vis-à-vis the EPA in a number of unpublished dispositions. *See New York v. EPA*, No. 02-1387 *et al.*, 2003 WL 22326398, at *1 (D.C. Cir. Sept. 30, 2003) (denying petition for writ of mandamus because EPA's delay was not "so extraordinary as to warrant mandamus relief"); *In re Sierra Club*, No. 01-1141, 2001 WL 799956, at *1 (D.C. Cir. June 8, 2001) (declining to issue writ of prohibition against EPA because petitioners had "other adequate means to obtain the relief requested"); *In re New Mexico*, No. 95-1273, 1995 WL 479797, at *1 (D.C. Cir. July 19, 1995) (declining to issue writ because agency delay was not unreasonable). And relatedly, we declined to issue an injunction against the EPA to compel it to reach a final decision—equitable relief similar to that provided by an extraordinary writ. *Sierra Club v. Thomas*, 828 F.2d 783, 784 (D.C. Cir. 1987).

*appropriate* to do so. To obtain a writ, a petitioner must satisfy three conditions:

> (1) the mandamus petitioner must have no other adequate means to attain the relief he desires, (2) the mandamus petitioner must show that his right to the issuance of the writ is clear and indisputable, and (3) the court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.

*In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014) (quotation marks omitted). Although the test is framed in terms of mandamus, it is equally applicable to a writ of prohibition. *See In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1063 n.4 (D.C. Cir. 1998) (per curiam) ("the grounds for issuing the writs [of mandamus and prohibition] are virtually identical"); *see also In re McCarthey*, 368 F.3d 1266, 1268 (10th Cir. 2004) ("The standards for reviewing petitions for writs of prohibition are similar to the standards for reviewing petitions for writs of mandamus.").

The third factor in the three-part test evaluates whether a writ is appropriate given the circumstances of the case. This factor is grounded in equitable principles: "The common-law writs, like equitable remedies, may be granted or withheld in the sound discretion of the court." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943). Our discretion is relatively unbounded; it is informed only by "those principles which should guide judicial discretion in the use of an extraordinary remedy rather than . . . formal rules rigorously controlling judicial action." *Id*. at 26. We have characterized the appropriateness inquiry as "a relatively broad and amorphous totality of the circumstances consideration." *In re Kellogg*, 756 F.3d at 762. At the same time, appropriateness must take

into account that the power to issue writs is "sparingly exercised." *Parr v. United States*, 351 U.S. 513, 520 (1956).

Granting the writ would be inappropriate in this instance because the EPA has represented that it will promulgate a final rule *before* this opinion issues. In the proposed rule, the EPA stated that it "expects to finalize this rulemaking by June 1, 2015" due to "the urgent need for actions to reduce [greenhouse gas] emissions." 79 Fed. Reg. at 34,838. Counsel for the EPA at oral argument again stated that the proposed rule "might not be [promulgated in] June" but "will be [promulgated] this summer." Oral Arg. Tr. 77–78. Thus, by the time the majority opinion and this concurrence issue— or shortly thereafter—the petitioners will have a final rule that can be challenged as final agency action in this Court. *See Ass'n of Irritated Residents v. EPA*, 494 F.3d 1027, 1030 (D.C. Cir. 2007) ("final agency actions[] includ[e] an agency's promulgation of a rule"). Assuming at least one petitioner has standing, we will then adjudicate the same questions raised here. Keeping in mind that the common law writs are "drastic and extraordinary remed[ies] reserved for really extraordinary causes," *Cheney v. U.S. Dist. Court for the Dist. of Columbia*, 542 U.S. 367, 380 (2004) (quotation marks omitted), the overtaking of these petitions by the imminent issuance of a final rule, in my view, moots the requested relief.

The petitioners believe that a writ of prohibition is appropriate because waiting to challenge the final rule is inconvenient and costly. But that alone does not justify an extraordinary remedy. *See Nat'l Right to Work Legal Defense v. Richey*, 510 F.2d 1239, 1242 (D.C. Cir. 1975) (writ of mandamus not "appropriate" when "review of the . . . question will be fully available on appeal from a final" decision); *U.S. ex rel. Denholm & McKay Co. v. U.S. Bd. of*

*Tax Appeals*, 125 F.2d 557, 558 (D.C. Cir. 1942) (declining to grant writ of prohibition even though waiting for normal appellate review "may be costlier in effort and money than if the issue of jurisdiction were settled now"); *Noble v. Eicher*, 143 F.2d 1001, 1002 (D.C. Cir. 1944) (declining to grant writ of prohibition even though "there will [be] inconvenience to the petitioners"). These objections therefore cannot carry the day.

In sum, although we have the authority to issue a writ of prohibition, I would decline to do so because the passage of time has rendered the issuance all but academic.